REXACH & PIÑERO ET AL., Petitioners and Appellants, *v.* R. SANCHO BONET, TREASURER OF PUERTO RICO, Respondent and Appellee.

No. 7578.   Argued February 6, 1940.—Decided July 18, 1940.

*J. J. Ortiz Alibrán* for appellants.   *George A. Malcolm, Attorney General,* and *R. García Cintrón, Deputy Attorney General,* for respondent.

MR. JUSTICE WOLF delivered the opinion of the court.

Rexach & Piñero, José A. Rexach, and Ignacio Piñero Estrella, made before the District Court of San Juan, on the 18th of October, 1935, an application for a writ of mandamus against the then Treasurer, R. Sancho Bonet. The idea of the writ was that the court should compel the substituted Treasurer to pay to the petitioners certain amounts which they claimed had been adjudicated to them by the Board of Review and Equalization.

The action of the board ordering the payments took place on October 29, 1933. Despite the order of the board the then Treasurer, Manuel V. Domenech, refused to make the payment, substantially on the ground that the taxes had been voluntarily paid and hence could not be recovered.

What had happened was that on the 22d of August 1921, the firm of Rexach & Piñero filed a return for the fiscal year of 1920, making payment in accordance.

On the 10th of February 1927, the Treasurer found that the firm owed $27,126.71 for a deficiency of taxation. This amount was administratively reduced apparently to $8,717.15. On or about the 31st of May 1929, the Treasurer and the petitioners agreed that the amount owing was $9,225.26. The Treasurer and the People of Puerto Rico maintain that the parties agreed with the Treasurer to pay this amount in the proportion of two-thirds by Rexach and one-third by Piñero, in accordance with their interest in the partnership firm which had been dissolved. On the 31st of May voluntarily Rexach paid $6,150.44 to the Treasurer. Piñero never turned over any money to the Treasurer and therefore the Treasurer attached some property of Piñero to recover $4,031.21, then calculated to be due for the deficiency and also $2,138.06 as property taxes on the farm (finca) attached.

There was a public sale of this property and it was bought in by the "Asilo de las Hermanitas de los Ancianos Desamparados" as a mortgage creditor. Before the property was redeemed, on or about April 11, 1933, Messrs. Rexach and Piñero presented to the Treasurer, Mr. Domenech, a petition for the return of the sums paid under protest.

Briefly the theory of the application was that the deficiency was calculated on an unconstitutional provision of the law and also because their right to recover against Rexach & Piñero had prescribed. The Treasurer refused to pay the claim. On appeal to the Board of Review and Equalization the action of the Treasurer was reversed. The Treasurer still refused to make the payment.

On the 18th of February 1937, the District Court of San Juan rendered an opinion and judgment by which it held that Mr. Rexach had no claim, as he had paid voluntarily, but the court did at first consider and allow the claim of Piñero. On a motion to that effect the district court reconsidered its action and rendered judgment dismissing the complaint as to both plaintiffs.

The grounds of the decision were (a) that the board on the 29th of October 1933, did not order the Treasurer to pay anything except the amount which José A. Rexach had paid voluntarily; (b) that it was discretionary in the Treasurer to grant a petition for refund and as the board did not so order (assuming that an attachment of property is equivalent to an involuntary payment) the mandamus did not lie because the Treasurer had no ministerial duty.

■ Since this decision was made much water has run under the judicial mills. At the time that the court rendered its decision, neither the case of *Porto Rico Fertilizer Co.* v. *Treasurer,* 50 P.R.R. 389, nor the case of *Yabucoa Sugar Co.* v. *Domenech, Treas.,* 51 P.R.R. 132, had been decided. The brief of the appeal in this case was filed on November 25, 1938. By that time the Circuit Court of Appeals for the First Circuit had reviewed the cases of *Porto Rico Fertilizer Co.* v. *Treasurer* and *Yabucoa Sugar Co.* v. *Domenech, Treas., supra,* and to a certain extent had modified our opinions. So that the theory of the appellants. in part rests on the decision of the Circuit Court of Appeals which would make it possible for Rexach to pursue his suit as a matter of right and perhaps rely on the decision of the Board of Review and Equalization.

So far as Rexach is concerned, any doubt about his right to proceed has been put at rest by the decision in the case of *Porto Rico Fertilizer Co.* v. *Treasurer,* 54 P.R.R. 644. That opinion in turn relied on the case of *Bonet* v. *Yabucoa Sugar Co.,* 306 U. S. 505, which opinion was copied verbatim in the case of *Porto Rico Fertilizer Co.* v. *Treasurer, supra.*

Before the opinion of the Supreme Court of the United States there might have been a doubt under the local acts whether taxes paid voluntarily could be recovered, but the decision of the Supreme Court of the United States made these local decisions definitely the rule of the law that is to prevail in Puerto Rico.

██ À somewhat different case is presented for Piñero. He did not distinctly pay his taxes voluntarily as his former partner did. He made no payment at all to the Treasurer of Puerto Rico. The Government insists that Rexach, Piñero and the Government came to an agreement where-under Piñero was to pay one-third of the whole tax assessed against Rexach and Piñero. We have a doubt, looking at the pages of the record to which the Attorney General refers, whether the agreement was anything more than one between Rexach and Piñero as to the proportion of the whole tax which each was to pay. But under the view we take of this branch of the case the question of a voluntary payment *vel non* need play no great role.

Some of the contentions of the Treasurer in the court below were that the Treasurer had no right to refund the amount, but that it would have been the duty of Piñero, if right, to go into court and have the attachment set aside. But the Treasurer, however, was the author of the attachment. He was the principal benefited under the attachment, and if he attached wrongfully or irregularly, he was the person who could be reached directly, and Piñero was under no duty of having the attachment set aside.

However, what we do think is that the decision of the Supreme Court of the United States in *Bonet* v. *Yabucoa Sugar Co., supra,* in the ordinary case, makes the payment of taxes under protest imperative. The appellee maintains that there was no holding or finding by the board with respect to Piñero and hence, of course, the Treasurer would not be obliged. This was a finding of the court below which the appellant does not convince us by citation of record that it was mistaken.

The only case in which a right to mandamus would arise would be one where the right to recover had been definitely settled on legal grounds by the Board of Review and Equali-

zation. The appellants are relying on the bare decision of the board as fixing a definite ministerial right to a review by mandamus.

Under the writ of mandamus the courts have a right to look to see whether there is an equitable right in the petition and of this equitable right the appellant does not convince us.

Under the recited circumstances we do not feel that Piñero availed himself of the opportunity to pay the taxes under protest and, even if he had made payment, that a good claim for refund arose.

The judgment should be affirmed.

Mr. Justice De Jesús took no part in the decision of this case.